[Cite as *Brooklyn v. Woods*, 2016-Ohio-1223.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103120**

## CITY OF BROOKLYN

PLAINTIFF-APPELLEE

vs.

## WILLIAM WOODS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Parma Municipal Court
Case No. 14CRB03624

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 24, 2016

**ATTORNEY FOR APPELLANT**

Richard Agopian
1415 West Ninth Street
2nd Floor
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Hillary Goldberg
Brooklyn City Prosecutor
7619 Memphis Avenue
Brooklyn, Ohio 44144

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, William Woods ("Woods"), appeals from his petty theft conviction following a bench trial in the Parma Municipal Court. He raises the following six assignments of error for review:

> 1. The appellant was denied his right to counsel as guaranteed to him by the Sixth Amendment to the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.
>
> 2. The appellant failed to receive effective assistance of counsel during the trial as guaranteed by the Sixth Amendment, and the Ohio Constitution.
>
> 3. The appellant's convictions are against the manifest weight of the evidence.
>
> 4. The evidence was insufficient to convict the appellant of theft.
>
> 5. The appellant was denied due process of law and a fair trial as guaranteed to him by the Fifth and Sixth Amendments to the U.S. Constitution when the trial court failed to grant a five minute recess to allow him to obtain demonstrative evidence to proffer as an exhibit; Article I, Section 10 of the Ohio Constitution.
>
> 6. The appellant was denied due process of law, a fair trial, the right to be present during a critical stage of the trial, his right to confront evidence against him, and his right to a public trial in violation of the Fifth, Sixth, and Fourteenth Amendments; and Article I, Sections 10 and 16 of the Ohio Constitution.

**{¶2}** After careful review of the record and relevant case law, we affirm Woods's petty theft conviction.

## I. Procedural and Factual History

{¶3} Woods was charged with petty theft in violation of R.C. 2913.02. The matter proceeded to a bench trial in the Parma Municipal Court where the following facts were adduced.

{¶4} In June 2014, Woods entered a Walmart store located in the city of Brooklyn, Ohio. Walmart asset protection specialists, Shawn Foster ("Foster") and Celso Dela Cruz ("Cruz"), testified that they observed Woods enter the store's electronics department and place a $99.96 TV wall mount, and a $17.96 electronic accessory into his shopping cart. Woods then left the electronics department and traveled to a grocery aisle located on the other side of the store. While he was in the grocery aisle, Foster and Cruz followed behind Woods at a safe distance and witnessed him peel off the Universal Product Code ("UPC") sticker from the less expensive electronic accessory and place it over the UPC sticker located on the TV wall mount box. According to Cruz, Woods "left the [electronic accessory box] behind" and proceeded to the check out line. At that time, the Walmart cashier scanned the UPC sticker located on the TV wall mount box, and Woods paid $17.96 for the TV wall mount.

{¶5} Once Foster and Cruz verified with the cashier that Woods only paid $17.96 for the TV wall mount, they stopped him in the vestibule area of the store after he passed the last point of sale. Following a brief conversation, Woods was escorted to Walmart's asset protection office where Woods "admitted to switching the [price] tags" on the two items.

{¶6} Foster and Cruz admitted that Walmart's security cameras did not capture Woods switch the UPC stickers on video. Cruz explained that although Walmart has "between 200 and 300" security cameras throughout the store, the cameras are in "fixed" positions. Cruz testified that, based on these limitations, the security camera located near the grocery aisle where Woods switched the UPC stickers did not have a sufficient camera angle to observe Woods's criminal activity. During the cross-examination of Cruz, defense counsel attempted to play the surveillance footage taken of Woods while he was in the electronics department of the store. However, because the prosecutor was unable to view the video before trial because of technological difficulties, the parties agreed to mark the video as "heard and submitted" and admitted it into evidence as "Joint Exhibit A."

{¶7} Defense counsel rested without presenting any witnesses.

{¶8} At the conclusion of trial, the trial court found Woods guilty of petty theft. The court imposed a $250 fine and sentenced Woods to 180 days in jail with credit for time served.

{¶9} Woods now appeals from his conviction.

## II. Law and Analysis

{¶10} For the purposes of judicial clarity, we review several of Woods's assignments of error out of order.

## A. Constitutional Rights

{¶11} In his first assignment of error, Woods argues the trial court's decision to review the security video outside defense counsel's presence deprived him of his right to counsel as guaranteed to him by the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

{¶12} In his sixth assignment of error, Woods argues the trial court's decision to review the security video without him present denied him due process of law, a fair trial, the right to be present during a critical stage of the trial, his right to confront evidence against him, and his right to a public trial in violation of the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

{¶13} Because Woods's first and sixth assignments of error raise related arguments, we address them together.

{¶14} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to counsel at all critical stages of a criminal proceeding. *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, ¶ 13; *Iowa v. Tovar*, 541 U.S. 77, 80-81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) ("[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process"). "[I]n addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the state at any stage of the prosecution, formal or informal, in court or out, where counsel's absence

might derogate from the accused's right to a fair trial." (Footnote omitted.) *United States v. Wade*, 388 U.S. 218, 226, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

**{¶15}** Similarly, one of most basic rights reserved by the Confrontation Clause of the Sixth Amendment is a defendant's correlative right to be present in the courtroom during every stage of the trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Section 10, Article I of the Ohio Constitution and Crim.R. 43(A) also require the defendant's presence. *State v. McCollins*, 8th Dist. Cuyahoga No. 95486, 2011-Ohio-2398, ¶ 7, citing Crim.R. 43(A) and the Ohio Constitution, Article I, Section 10. "[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 107-108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds*, *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

**{¶16}** The right to a public trial is guaranteed by the Sixth Amendment to the United States Constitution and by Section 10, Article I of the Ohio Constitution. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 81. The violation of the right to a public trial is a structural error and is not subject to harmless error analysis. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 50, citing *Waller v. Georgia*, 467 U.S. 39, 49-50, 104 S.Ct. 2210, 81 L. Ed.2d 31 (1984), fn. 9. Before discussing structural error, however, an appellate court must first find that a

constitutional error has occurred. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 55.

{¶17} Collectively, Woods argues the trial court violated the foregoing constitutional guarantees by (1) failing to play the surveillance video in open court, and (2) viewing the surveillance video outside of his presence and the presence of counsel. Woods maintains that the surveillance video was critical to his defense and that the trial court's actions deprived him of a fair trial.

{¶18} At the trial, defense counsel argued that Woods never placed an electronic accessory into his shopping cart as suggested by Foster and Cruz. In furtherance of this theory, defense counsel attempted to rebut Cruz's testimony that he observed Woods place the TV wall mount, and an electronic accessory into his shopping cart, by suggesting that Walmart's surveillance video only showed Woods place the TV wall mount into his cart before he left the electronics department. Relevant to the arguments raised in his first and sixth assignments of error, the following exchange took place during defense counsel's cross-examination of Cruz:

DEFENSE COUNSEL: And does the [surveillance] video show my client selecting one item or two?

CRUZ: Two.

DEFENSE COUNSEL: Your Honor, if we could show the video.

THE COURT: Do we have it?

PROSECUTOR: Your Honor, I actually went over this with him and we spoke prior to court and I couldn't play it, I've never seen the video, you saw the video and you said it doesn't show anything and I can't get it to play so we can give it to her and let her play it

and do a heard and submitted if you want but I have absolutely no way of getting my computer —

DEFENSE COUNSEL:   It doesn't play on a PC, or it doesn't play on a MAC, it would play on a PC.

PROSECUTOR:   I don't have it and I'm not bringing it in so if he has a way to show it, it's his Exhibit.

THE COURT:   Do we have the actual, do we have the video here?

DEFENSE COUNSEL:   I have a copy.

THE COURT:   So why don't we continue with the testimony and then I will, we will do a heard and submitted — [Defense counsel] I would love to see that video.

PROSECUTOR:   Your Honor, we can do both but this is the one that chain of custody — but you can give yours too.

THE COURT:   Let me take both of them okay and that way I can look at both of them and then make my decision after I see this.

DEFENSE COUNSEL:   That's fine.

THE COURT:   Perfect.   Thank you.   Should we call it Joint Exhibit?

DEFENSE COUNSEL:   That's fine Your Honor.
THE COURT:   Okay then I will[.]

{¶19} In light of the forgoing exchange, we find the trial court did not violate Woods's constitutional rights by reviewing the surveillance video outside the presence of Woods or his counsel.   While the decision not to play the video during trial may not have been the preferred practice, technological difficulties in this case led to the parties' agreement to mark the video as "heard and submitted" and introduce it into evidence as "Joint Exhibit A."   Thus, the exhibit was submitted to the court, as the trier of fact, for consideration during its deliberations.   Under these circumstances, we are unable to

conclude that the time in which the trial court reviewed the video qualified as a "critical stage" of the proceedings. *See State v. Dovala*, 9th Dist. Lorain No. 05CA008767, 2007-Ohio-4914 (finding no constitutional violations where the trial court, rather than playing a videotape during trial, ordered the state to mark it as an exhibit and gave the tape directly to the jury during deliberations.); *People v. Young*, 996 N.E.2d 671 (Ill.App.2013), ¶ 24 ("the court's watching and listening to the DVDs was not a 'critical stage' of defendant's trial."); *State v. Pacelli*, 350 P.3d 1138, 2015 Kan.App. Unpub. LEXIS 477, * 22 (Kan.App.2015) ("the [trier of fact]'s review of the trial exhibit was not a critical stage of the proceeding at which [defendant] had a constitutional right to be present personally or through counsel."). *See also Rothgery v. Gillespie Cty., Texas*, 554 U.S. 191, 212, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008), fn. 16 (noting that "critical stages" include proceedings between an individual and agents of the state that amount to trial-like confrontations at which counsel would help the accused in coping with legal problems or meeting the adversary.).

{¶20} In this case, Woods was present and represented by counsel during all critical stages of the proceedings, including the portion of trial where defense counsel relied on the surveillance video to suggest Foster and Cruz's testimony was unreliable. The extent to which counsel utilized the video during the trial is more adequately addressed in a claim of ineffective assistance of counsel, as argued in Woods's second assignment of error.

**{¶21}** Moreover, although the surveillance video was not shown in open court, the parties marked it as an exhibit thereby making it a public record available for public viewing. *Dovala* at ¶ 12, citing *Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 55. Accordingly, the trial court's recommendation to admit the surveillance video into evidence without playing it in open court was not a constitutional error. *Id*. at ¶ 13.

**{¶22}** Woods's first and sixth assignments of error are overruled.

## B. Sufficiency and Manifest Weight of the Evidence

**{¶23}** In his third and fourth assignments of error, Woods argues his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶24}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶25}** In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion rather than production. *State v. Whitsett*, 8th Dist.

Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, at 387. This court reviews the entire record, weighs the evidence and all reasonable inferences, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶26} In conducting such a review, this court remains mindful that the credibility of the witnesses is primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶27} In this case, Woods was convicted of petty theft in violation of R.C. 2913.02(A)(1), which states, in relevant part:

> No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) by deception.

{¶28} In challenging the sufficiency of the evidence supporting his conviction, Woods contends the trial court's finding of guilt improperly "piggybacked" inferences and relied on speculation. In short, Woods argues the trial court inferred his guilt merely because he purchased the TV wall mount at a reduced price, without sufficient evidence that he altered the UPC sticker on the TV wall mount box. We disagree.

{¶29} In this case, the state presented the testimony of two Walmart asset protection specialists who testified that they observed Woods remove the UPC sticker from a less expensive electronic accessory and place it over the UPC sticker located on the TV wall mount box.

{¶30} Specifically, Foster testified that he observed Woods place the TV wall mount, valued at $99.97, and an electronic accessory, valued at $17.96, into his shopping cart. Foster followed Woods as he left the electronic department and traveled to a grocery aisle where Woods "switched the tags for the wall mount and the cheaper electronics accessory." When Woods checked out, Foster "confirmed that [Woods] did pay a smaller amount for the wall mount than was advertised" before he and Cruz stopped Woods after he "passed the last point of sale." In addition, Foster testified that once he was escorted to the store's loss prevention office, Woods "admitted to switching the stickers" on the two items.

{¶31} Similarly, Cruz testified that Woods placed a TV wall mount and a cheaper electronic accessory into his shopping cart. Cruz then observed Woods make his way to the grocery aisle where he "took the cheaper label and put it on the, over the UPC of the expensive [TV wall mount], and left the cheaper [electronic accessory] behind." Once Woods purchased the items in his shopping cart, Cruz confirmed with the store cashier that Woods paid $17.96 for a TV wall mount priced at $99.96. Based on this information and his prior observations, Cruz stopped Woods once he passed the last point

of sale and escorted him to the store's loss prevention office. Cruz testified that Woods admitted to "switching the UPCs or the stickers" on the two items.

**{¶32}** Viewing this evidence in a light most favorable to the prosecution, we find there was sufficient evidence for the trial court to find all the material elements of the offense beyond a reasonable doubt. In our view, the testimony presented at trial did not require the trial court to stack inferences or rely on speculation. Instead, the prosecution presented credible evidence that Woods knowingly deceived Walmart by switching UPC stickers on its property to obtain a TV wall mount for a lesser amount than it was actually priced. *See Middleburg Hts. v. Feltes*, 8th Dist. Cuyahoga No. 81776, 2003-Ohio-3248. Accordingly, Woods's petty theft conviction is supported by sufficient evidence.

**{¶33}** In challenging the weight of the evidence supporting his conviction, Woods contends that Foster's and Cruz's testimony contain numerous inconsistencies and deficiencies that cast doubt on whether their recollection of the incident was credible. Woods identifies the following inconsistencies or deficiencies in their testimony (1) Foster's varied testimony relating to whether he witnessed Woods discard the electronic accessory box in the grocery aisle; (2) Cruz's initial testimony that he did not see what happened to the electronic accessory box, but subsequent testimony that he saw Woods leave the box behind; (3) Foster's testimony that Woods had two bottles of soda in his shopping cart when he entered the electronics department while the surveillance video shows his cart was empty; (4) the fact that neither Foster or Cruz testified that Woods selected a 24-pack of water while he was in the grocery aisle, thereby creating an

"inference that the two witnesses obviously weren't there at the [grocery] aisle, or paying close attention to Woods as they claimed"; (5) the size and location of the UPC label on the TV wall mount box; and (6) Cruz's confusing testimony concerning whether Woods's admission to the theft occurred in the asset protection office, the vestibule area of the store, or in both locations.

{¶34} In addition, Woods argues that portions of Foster's and Cruz's testimony are rebutted by the surveillance footage taken of Woods while he was in the electronics department. As stated, Foster and Cruz testified that they observed Woods place the TV wall mount and the electronic accessory into his shopping cart before he left the electronics department. In contrast, Woods maintains that the surveillance video only shows him place the TV wall mount into his shopping cart. Thus, Woods maintains that the surveillance video supports his position that he (1) never picked up an electronic accessory while he was in the store, (2) did not switch the price tag on the TV wall mount, and (3) had no knowledge that the TV wall mount contained an incorrect price tag at the time he purchased the item.

{¶35} We are mindful that a conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent or contradictory testimony. *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11. The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar

competence of the factfinder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

**{¶36}** After careful consideration of the challenged testimony, we find this is not the exceptional case in which the evidence weighs heavily against the conviction. In rendering its verdict, the trial court stated that it carefully considered all of the evidence, including the surveillance video and the testimony provided by Foster and Cruz. The record reflects that defense counsel spent a considerable amount of time cross-examining Cruz and Foster on the perceived inconsistences relied upon by Woods in this assignment of error. In our view, the challenged portions of the witnesses' testimony reflected their vague recollection of certain details of the incident. They do not, however, cast serious doubt on Foster and Cruz's testimony that they observed Woods remove the UPC sticker from the less expensive electronic accessory and place it over the UPC sticker located on the TV wall mount.

**{¶37}** Moreover, with respect to Woods's argument that the surveillance video contradicts Foster's and Cruz's testimony, we note that this court has reviewed the relevant surveillance footage and find that it is not definitive given the limitations of the camera angle. The relevant surveillance footage, labeled "Clip_2," depicts the rear aisle of the electronics department in Walmart. At approximately 5:56:10 p.m., the video shows Woods examining the different models of TV wall mounts located on the back shelf of the store. His shopping cart appears to be empty at that time. At approximately 5:57:10 p.m., Woods, with his back to the camera, picks up a large box and

places it in his shopping cart. At 5:58:30 p.m., Woods briefly walks down a second electronic aisle that runs perpendicular to the aisle where the TV wall mounts are located. Given the position of the security camera, Woods disappears from the video for approximately ten seconds while he is in the second electronic aisle. When he reappears, it is unclear, given the quality of the video footage, whether the electronic accessory is or is not in Woods's shopping cart when he exits the electronics department of the store. Given the limitations of the surveillance video, we defer to the trial court's resolution of the alleged inconsistencies between the video footage and the testimony provided by Foster and Cruz.

**{¶38}** Based on our review of the entire record in this case, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, we are unable to conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Woods's petty theft conviction must be reversed and a new trial ordered.

**{¶39}** Woods's third and fourth assignments of error are overruled.

### C.   The Trial Court's Denial of Defense Counsel's

### Request for a Recess

**{¶40}** In his fifth assignment of error, Woods argues he was denied due process of law and a fair trial when the trial court denied defense counsel's request for a brief recess in the midst of trial.

**{¶41}** The decision whether to grant a continuance is within the "broad, sound discretion" of the trial court and will not be reversed absent an abuse of discretion. *In re S.C.*, 8th Dist. Cuyahoga No.102350, 2015-Ohio-2410, ¶ 23. An abuse of discretion occurs where the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶42}** In *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), the Ohio Supreme Court identified certain factors to be considered in determining whether a continuance is appropriate. These factors include:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id*. at 67-68.

**{¶43}** In this case, defense counsel requested a five-minute recess so that Woods could retrieve demonstrative evidence from his vehicle. Defense counsel indicated that the demonstrative evidence included "the very items that are alleged to have been stolen." Counsel clarified that the items were not the original items actually involved in the incident, but were "similar" and could assist the court in rendering its verdict.

**{¶44}** In this instance, Woods clearly contributed to the circumstance that led to the requested recess by leaving the items in his vehicle. Moreover, the trial court was aware that the items intended to be introduced as demonstrative evidence were not the

original boxes involved in the incident. Under these circumstances, the court was free to conclude that the probative value of demonstrative evidence, including the size of the boxes or location of the UPC stickers, would have been, at the very most, cumulative to the photograph of the original TV wall mount box, marked exhibit D, and the testimony provided at trial. Woods has not articulated a basis to suggest otherwise.

**{¶45}** Accordingly, the trial court did not abuse its discretion by denying the requested recess. Further, there is nothing in the record to suggest that Woods was denied due process of law or the right to a fair trial without the use of the demonstrative evidence.

**{¶46}** Woods's fifth assignment of error is overruled.

### D. Ineffective Assistance of Counsel

**{¶47}** In his second assignment of error, Woods argues he received ineffective assistance of counsel. The test for ineffective assistance of counsel requires a defendant to prove "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In reviewing a claim of ineffective assistance of counsel, we examine whether counsel's acts or omissions "were outside the wide range of professionally competent assistance" and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To establish the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

### 1. Introduction of Evidence Allegedly Not Provided to Defense Counsel During Discovery

{¶48} Initially, Woods argues defense counsel rendered ineffective assistance of counsel by failing to request sanctions or seek a continuance when the prosecutor introduced evidence that had not been provided to defense counsel during discovery.

{¶49} During Cruz's direct examination, the prosecutor attempted to introduce the receipt for purchases made by Woods on the day of the incident. At that point, defense counsel informed the trial court that he did not receive the document prior to trial:

PROSECUTOR: And I'm going to show you —

DEFENSE COUNSEL: For what purpose? I mean that was never shown to me.

PROSECUTOR: It was in the same packet of everything else you have.

DEFENSE COUNSEL: No you only gave me the two photos that we discussed in the e-mail.

PROSECUTOR: You have the Walmart, I gave you that.

DEFENSE COUNSEL: You gave me what?

PROSECUTOR: The receipt.

DEFENSE COUNSEL: Yes that was not in there.

PROSECUTOR: It's fine I don't need to.

**{¶50}** Shortly thereafter, the prosecutor attempted to introduce testimony from Cruz that Woods had admitted to "switching the tags." Again, defense counsel objected to the testimony, noting that while he stipulated to Woods's "admission to the theft," he had not received information relating to the "switching of tags," either by way of summary of the statement from Cruz or a statement made by Woods:

> PROSECUTOR: And did you have any discussions with Mr. Woods about the theft?
>
> CRUZ: Yes
>
> PROSECUTOR: Or the switching of tags?
>
> CRUZ: Yes I did.
>
> DEFENSE COUNSEL: Objection
> THE COURT: Hold please.
>
> DEFENSE COUNSEL: First of all any discussions relating to specifically the switching of tags were never revealed to me Your Honor. Anything beyond this is news to me if my client —
>
> PROSECUTOR: I'm just going on what the report — I'm sorry Your Honor if that's not news to him it's in the report that he says where it says the Defendant admitted, so that's all, I mean, we're just going back, I mean that's part of what he said he did.
>
> THE COURT: The first witness testified to the same thing?
>
> DEFENSE COUNSEL: Just to the admission of the theft, that's it. I'll stipulate —
>
> PROSECUTOR: That's what he did.
>
> DEFENSE COUNSEL: — there was an admission to the theft but that was it.

**{¶51}** Woods contends that because the receipt and a summary of the admission to "switching the tags" were not provided to defense counsel during the discovery process, defense counsel "should

have asked that the evidence be excluded, or that a reasonable continuance be granted in order to evaluate the impact of this [new] information."

**{¶52}** Woods correctly states that Crim.R. 16 requires the prosecution to disclose any evidence "favorable to the defendant and material to guilt or punishment." Crim.R. 16(B)(5). Under Crim.R. 16(L)(1), if it is brought to the attention of the trial court that a party has failed to comply with this discovery rule, the trial court may order or permit the discovery, order a continuance, prohibit the party from introducing the material not disclosed, or make any other order it deems just under the circumstances. *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 66.

**{¶53}** With respect to the prosecutor's attempt to introduce the original receipt of Woods's purchases, the record reflects that defense counsel raised a timely objection that ultimately caused the prosecutor to forego its attempt to introduce the receipt and move forward with its line of questioning. Thus, we are unable to conclude that defense counsel's successful objection constituted a deficient performance. Furthermore, Woods has not demonstrated how he was prejudiced by counsel's failure to request sanctions or a continuance pursuant to Crim.R. 16(L)(1), particularly where the challenged exhibit was not introduced into evidence, and there was ample testimony relating to the retail value of Walmart's property and the amount Woods actually paid for the TV wall mount.

**{¶54}** Moreover, the testimony presented at trial indicated that Cruz's incident report, which defense counsel utilized during his cross-examination of Cruz, contained a written statement by Cruz that Woods "admitted to the theft." While Woods attempts to

make a distinction between the phrases, "admitted to the theft" and "admitted to switching tags," we find that defense counsel was provided with sufficient notice of the admission during the discovery process and that Cruz was permitted to expand upon the written statements contained in his incident report. Thus, any request to exclude the portions of Cruz's testimony relating to the admissions made to him by Woods would have proven unsuccessful. Accordingly, we are unable to conclude that counsel's performance fell below an objective standard of reasonableness.

### 2. Failure to Bring Demonstrative Evidence into the Courtroom

{¶55} As discussed in his fifth assignment of error, Woods argues defense counsel was ineffective for failing to ensure that the demonstrative evidence was available at trial. Without addressing the admissibility of the demonstrative evidence, we find there is nothing in the record to suggest, nor does Woods allege, that the outcome of trial would have been different had the demonstrative evidence been introduced at trial. Accordingly, Woods was not prejudiced by defense counsel's failure to ensure that the demonstrative evidence was available at trial.

### 3. Failure to use the Surveillance Video to Cross-Examine Witnesses

{¶56} Finally, Woods argues defense counsel was ineffective for failing to use the surveillance video during the cross-examination of Foster and Cruz.

{¶57} After careful consideration of the relevant testimony and the surveillance video, we find Woods was not prejudiced by defense counsel's failure to use the video during cross-examination. We note that defense counsel attempted to use the video

during the cross-examination of Cruz, but was prevented from doing so due to technological difficulties. Nevertheless, the video was submitted to the trier of fact as a joint exhibit, and defense counsel actively argued throughout the remainder of trial that the contents of the video contradicted Foster's and Cruz's testimony and thereby called their credibility into question. Moreover, the court expressly stated that it considered the video in reaching its verdict.

{¶58} Under these circumstances, Woods has not shown how the outcome of the trial would have been different had counsel used the surveillance video during its cross-examination of the City's witnesses.

{¶59} Woods's second assignment of error is overruled.

### III. Conclusion

{¶60} Woods's petty theft conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Woods did not receive ineffective assistance of counsel during his trial. The trial court did not abuse its discretion by denying defense counsel's request for a brief recess so that Woods could retrieve demonstrative evidence from his vehicle. Finally, the trial court did not violate Woods's constitutional rights by failing to play the surveillance video in open court or by reviewing the video outside the presence of Woods and his counsel.

{¶61} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR