[Cite as *State v. Farrow*, 2019-Ohio-3311.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

STATE OF OHIO

    Appellee

    v.

RUSSELL FARROW

    Appellant

C.A. No.     18CA011327

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17CR095536

DECISION AND JOURNAL ENTRY

Dated: August 19, 2019

---

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Russell D. Farrow, appeals from the trial court's denial of his motion to suppress evidence in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    Sergeant Timothy Timberlake of the Ohio State Highway Patrol was working traffic enforcement on I-80 in Lorain when he observed a vehicle traveling 54 miles per hour in a 70 mile-per-hour zone. He followed the vehicle and observed it exit the turnpike without signaling a lane change, so he initiated a traffic stop. According to Sergeant Timberlake, once the passenger side window was opened, he immediately smelled the odor of burnt marijuana coming from within the vehicle. He separated the vehicle's two occupants, and testified that the driver indicated to him that marijuana had been smoked in the car earlier. Another trooper ("Trooper Grabel") secured the driver in her cruiser while Sergeant Timberlake spoke to Mr.

Farrow. The sergeant testified that Mr. Farrow also admitted marijuana had been smoked earlier and presented the sergeant with a cigar wrapper where he had previously kept the marijuana.

{¶3} According to Sergeant Timberlake, he had Mr. Farrow step out of the vehicle and intended to conduct a protective pat down prior to securing him in a cruiser while the vehicle was searched. According to another trooper ("Trooper Dowler"), he noticed a "big, abnormal bulge" in the front of Mr. Farrow's pants and believed he was trying to conceal something. When questioned as to what he was concealing, Mr. Farrow said it was nothing and then voluntarily removed a balled-up sock. "[A] bulge was still there," however, and the troopers inquired again. Mr. Farrow claimed it was his medicine and then removed a prescription pill bottle with the label ripped off. According to Sergeant Timberlake, "there was still a bulge in his pants[,]" and after more prompting from the troopers and a brief search of the exterior of his clothes, Mr. Farrow eventually removed three bags of pills, which later tested positive for oxycodone. A search of the vehicle revealed no marijuana, but a pack of cigarettes containing nine more oxycodone pills was discovered in the center console or cup holder. In totality, the police seized 491 oxycodone pills.

{¶4} Mr. Farrow was charged with felony trafficking in drugs, felony possession of drugs, and misdemeanor illegal use or possession of drug paraphernalia. He filed a motion to suppress, and the trial court held a suppression hearing. The court reviewed the evidence presented and, one month later, ruled from the bench and denied the motion. The court later filed a judgment entry denying the motion to suppress "[f]or reasons set forth on the record." Mr. Farrow then pled no contest to the indictment. The two felonies were merged for sentencing as allied offenses of similar import, and the State elected to have Mr. Farrow sentenced on the drug trafficking count. The trial court sentenced him to three years in prison for trafficking in

drugs and thirty days in jail for illegal use or possession of drug paraphernalia, to be served concurrently. The court also ordered Mr. Farrow to pay a mandatory fine of $7,500.00 and court costs. Mr. Farrow moved the trial court to stay execution of his sentence, and the court set a $7,500.00 surety bond pending appeal.

{¶5} We note that, at both the plea and sentencing hearings, the trial court and both parties all indicated an understanding that Mr. Farrow would be sentenced to a *mandatory* term of incarceration. *See* R.C. 2925.03(C)(1)(d) and 2925.11(C)(1)(c). However, when the trial court actually imposed its sentence for trafficking in drugs, both in open court and in its sentencing entry, no indication was given that the prison term was mandatory. Neither party has raised this issue in the instant appeal.

{¶6} Mr. Farrow now appeals from the trial court's denial of his motion to suppress evidence and raises two assignments of error for this Court's review.

{¶7} For ease of analysis, we will consolidate Mr. Farrow's assignments of error.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED TO THE DETRIMENT OF FARROW WHEN SAID COURT DENIED FARROW'S MOTION TO SUPPRESS. THE TRIAL COURT ERRED DUE TO THE FACT THAT SAID COURT RELIED ON FACTS THAT WERE NOT SUPPORTED BY COMPETENT AND CREDIBLE EVIDENCE TO DETERMINE THAT SGT. TIMBERLAKE HAD ESTABLISHED PROBABLE CAUSE.

**ASSIGNMENT OF ERROR TWO**

THE TRIAL COURT ERRED TO THE DETRIMENT OF FARROW WHEN SAID COURT DENIED FARROW'S MOTION TO SUPPRESS BECAUSE THE DRUGS AND DRUG PARAPHERNALIA FOUND ON FARROW WERE DISCOVERED AS THE RESULT OF AN UNCONSTITUTIONAL SEARCH.

{¶8} In both assignments of error, Mr. Farrow argues that the trial court erred in denying his motion to suppress. He does not challenge the propriety of the initial traffic stop, but instead focuses on the search of his person. He argues that (1) the trial court's determination that Sergeant Timberlake had probable cause to search was not based on competent, credible evidence, and (2) the search was therefore unconstitutional. We disagree with both propositions.

{¶9} Mr. Farrow pled no contest in this case and is therefore not precluded from asserting on appeal that the trial court erred to his prejudice in denying his motion to suppress. *See* Crim.R. 12(I). "Appellate review of a motion to suppress presents a mixed question of law and fact":

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶10} In denying Mr. Farrow's motion to suppress, the trial court found that Sergeant Timberlake had probable cause to search the vehicle and its two occupants, including Mr. Farrow. In reaching its decision, the court acknowledged its review of the dash cam video and the testimony of Trooper Dowler, but stated that the "vast majority" of information it relied on came from Sergeant Timberlake's testimony. The court found Sergeant Timberlake's testimony "relatively credible" with regard to the smell of marijuana in the vehicle, noting that the trooper stuck his head completely into the passenger window on at least three occasions while conducting his initial investigation and request for information. The court noted, however, that questions were raised by defense counsel during cross-examination as to the trooper's credibility

"with regard to his observations and his smell." The court nonetheless found Sergeant Timberlake "sufficiently credible" on the issue of smelling the odor of burnt marijuana, noting further that (1) both occupants, in separate conversations with the sergeant, "confirmed that at some time previously they had smoked marijuana," and (2) two air fresheners were observed in the vehicle. The court found that Sergeant Timberlake had probable cause to search the car's interior as well as the two occupants based on the smell of burnt marijuana, and further noted Trooper Dowler's observation of the "big pouch" on Mr. Farrow. Finally, the court found that "there was ultimately going to be a discovery of the subject pharmacy pills * * *."

{¶11} Mr. Farrow argues that the trial court's findings of fact were not based on competent, credible evidence. He specifically challenges as disingenuous, contradictory, and not supported by the dash cam video, Sergeant Timberlake's testimony that (1) he smelled the odor of burnt marijuana and (2) the occupants both admitted to him that marijuana had been smoked earlier.

{¶12} Sergeant Timberlake testified at the suppression hearing that, once the car window was opened, he immediately detected the odor of burnt marijuana. He testified as to his training and experience, including his familiarity with the odor of burnt marijuana and his ability to readily distinguish it from other odors. According to the sergeant, "Burnt marijuana is burnt marijuana. It doesn't smell like anything else." He testified that, in his twenty-five years of experience, he has encountered the smell of marijuana "[a] lot[,]" including during a traffic stop that occurred within a week prior to the traffic stop in this case. He also testified that when Mr. Farrow opened the glove compartment to retrieve the vehicle's rental agreement he observed Christmas tree air fresheners and a bottle of air freshener inside of the glove compartment. According to the sergeant, this was indicative of an "attempt[] to mask the odor of something."

{¶13} Sergeant Timberlake then testified that he asked the driver to step out of the vehicle. When he told her he could smell marijuana in the vehicle, "[s]he tilted her head back and exhaled and didn't say anything." According to the sergeant: "[She then] told [him] that they had smoked - - that she had not been smoking marijuana, but marijuana had been smoked earlier in the vehicle." Trooper Grabel was now at the scene and secured the driver, while Sergeant Timberlake re-approached the vehicle to speak to Mr. Farrow. The sergeant testified that he told Mr. Farrow he could smell burnt marijuana in the vehicle, and Mr. Farrow "told [him] that they had been smoking it earlier in the vehicle, and he pulled out a cigar wrapper out of the * * * handle for the vehicle * * * and showed it to [him], told [him] that it was in there, but that there was no marijuana in the car at that time." Sergeant Timberlake testified that, at that time, he was going to do a probable cause search based on the plain smell of burnt marijuana inside of the vehicle. He had Mr. Farrow step out of the vehicle, and testified that he intended to pat him down for weapons before securing him in a cruiser for safety purposes during the search of the vehicle.

{¶14} Trooper Dowler testified that when Mr. Farrow emerged from the vehicle it seemed "odd" that he was holding a red sweatshirt in front of him and "act[ing] almost like he was trying to conceal something, or hide something that he had on him * * *." The trooper further testified that he saw "a big, abnormal bulge[] just sticking out from [Mr. Farrow's] sweatpants." The trooper questioned Mr. Farrow about it, and Mr. Farrow removed a balled-up sock from his groin area. Trooper Dowler testified that "a bulge was still there," and Sergeant Timberlake testified that Mr. Farrow then removed a pill bottle with the label ripped off, while claiming, "[I]t's just medicine." Sergeant Timberlake testified that "there was still a bulge in his pants[,]" however, so he conducted a search on the exterior of Mr. Farrow's clothing by reaching

up into the groin area of his pants. According to the sergeant, he "could feel pills still in his trousers, in the groin area of his trousers." He told Mr. Farrow he could feel the pills, and Mr. Farrow removed three plastic bags of pills from inside of his pants. Sergeant Timberlake testified that Mr. Farrow would have been subjected to a typical pat down prior to being placed into a cruiser before a search of the vehicle even if the troopers had not noticed a bulge in his pants. He testified that it was possible the contraband would have been discovered during the forthcoming pat down. Mr. Farrow was placed under arrest, handcuffed, and read his *Miranda* rights. During a search of the vehicle, the police found a cigarette pack containing nine more pills in either the center console or the cup holder, but no marijuana. The pills later tested positive for oxycodone.

{¶15} The incident was also captured on video by Sergeant Timberlake's dash cam, which was entered into evidence. In the video, Sergeant Timberlake places his head in or near the vehicle's open, passenger side window on multiple occasions. Once he removes the driver from the vehicle, he asks her if Mr. Farrow has been drinking today, and she replies, "No." He asks if she has been drinking, and she again replies, "No." He then says, "Anybody been smoking marijuana in the car today? I can smell it." The driver does not say anything, but lets out a very pronounced exhale or sigh in response, and turns her head down and away from the sergeant. When Sergeant Timberlake speaks to Mr. Farrow back at the car, he says he "can smell the weed in the car[,]" and asks Mr. Farrow, "How much marijuana y'all got in here?" Although Mr. Farrow's response is inaudible on the video, the sergeant responds to Mr. Farrow with, "Smokin' it earlier?" Mr. Farrow's response is again inaudible, but the sergeant replies, "You smoked it?" Mr. Farrow's response is once again inaudible, but the sergeant responds, "Nothin' left?" The sergeant has Mr. Farrow step out of the vehicle and asks him, "How long

ago'd you smoke that in there?" Mr. Farrow replies, "I didn't smoke in the car." Mr. Farrow then tries to hand something to the sergeant and says, "It was, um, it was in here."

{¶16} Despite Mr. Farrow's argument to the contrary, our review of both the suppression hearing transcript and the dash cam video reveals that the sergeant's testimony was mostly corroborated by the dash cam video, except the driver only sighed and turned her head away when asked about marijuana; she did not verbally say marijuana had been smoked in the car, as Sergeant Timberlake testified. It would not be unreasonable based on the video, however, for both Sergeant Timberlake and the trial court to infer from the driver's immediate physical reaction to being asked if anyone had smoked marijuana in the car today that she knew marijuana had been smoked in the car that day. *See, e.g., State v. Little*, 9th Dist. Lorain No. 09CA009539, 2010-Ohio-101, ¶ 20 (stating that a jury could reasonably infer from a physical reaction of sweating profusely that the defendant knew a clear plastic bag contained illegal drugs). Moreover, although the dash cam video did not adequately capture all of Mr. Farrow's verbal responses to Sergeant Timberlake's questions about smoking marijuana, this does not mean that the video *contradicts* the sergeant's testimony that Mr. Farrow admitted marijuana had been smoked earlier. The sergeant clearly inquires as to the odor of marijuana in the car and engages Mr. Farrow in a specific conversation about smoking marijuana earlier, who smoked it, and whether any was left. The sergeant testified that Mr. Farrow said they had been smoking marijuana earlier in the vehicle, but that statement cannot be heard during the conversation. In the video, Mr. Farrow clarifies at the end of the conversation that he did not smoke it *in the car*, but he presents a cigar wrapper to the sergeant and says, "[I]t was in here." When faced with both a trooper's testimony and an unclear video of an incident, it is "not [] unreasonable for the trial court to believe that the [trooper's] view of the events was at least somewhat different than

that captured by the video given the circumstances[,]" provided the video does not *contradict* the trooper's testimony. *State v. Panaro*, 9th Dist. Medina No. 16CA0067-M, 2018-Ohio-1005, ¶ 13. *See also State v. Andrews*, 2d Dist. Greene No. 2016-CA-13, 2017-Ohio-1383, ¶ 47 (deferring to the trial court's assessment of the trooper's credibility when the video of the incident was unclear); *State v. Prater*, 2d Dist. Montgomery No. 24936, 2012-Ohio-5105, ¶ 8 (deferring to the trial court's finding, based on the officer's testimony, that consent to search was given because the video did not contradict the officer's testimony, as "not every word on the recording can be heard"); *Brooklyn v. Woods*, 8th Dist. Cuyahoga No. 103120, 2016-Ohio-1223, ¶ 37 (deferring to the trial court's resolution of alleged inconsistencies between video footage and testimony, when the video is "not definitive given the limitations of the camera angle"). Accordingly, as the video does not discredit the trooper's testimony, we cannot say that the trial court's findings in this matter were unsupported by the evidence. *See Panaro* at ¶ 14. Finally, no marijuana was ultimately discovered in the vehicle, but the trial court was not required to consider that particular fact as fatal to Sergeant Timberlake's credibility. *See, e.g., State v. Nocon*, 9th Dist. Lorain No. 10CA009921, 2012-Ohio-395, ¶ 6 ("Just because there was only a small quantity of marijuana in the van does not mean that the van did not smell like marijuana. After all, the smoking of the substance would have consumed it.").

{¶17} We remain mindful that the trial court, as the trier of fact, is in the best position to resolve any factual questions and evaluate the credibility of witnesses, and we must further accept the trial court's findings of fact if they are supported by competent, credible evidence. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. While trial court acknowledged that defense counsel's cross-examination raised some questions as to Sergeant Timberlake's credibility, it nonetheless found him to be a sufficiently credible witness. Based on our review of

the evidence presented, we determine that the trial court's findings of fact were based on competent, credible evidence. *See id.* Accepting the trial court's findings of fact as true, we must now independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *See id.*

{¶18} Mr. Farrow argues that he was subjected to an unconstitutional search of his person. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Article I, Section 14, of the Ohio Constitution.

> For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. * * * This requires a two-step analysis. First, there must be probable cause. If probable cause exists, then a search warrant must be obtained unless an exception to the warrant requirement applies. If the [S]tate fails to satisfy either step, the evidence seized in the unreasonable search must be suppressed.

*State v. Moore*, 90 Ohio St.3d 47, 49 (2000). Probable cause has been defined as "'a reasonable ground for belief of guilt'" and "must be based upon objective facts that would justify the issuance of a warrant by a magistrate." *Id.*, quoting *Carroll v. United States*, 267 U.S. 132, 161 (1925). Whether probable cause exists is determined by the totality of the circumstances. *State v. Jones*, 9th Dist. Lorain No. 12CA010270, 2013-Ohio-2375, ¶ 9; *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

{¶19} Sergeant Timberlake smelled the odor of marijuana coming from within the stopped car as soon as the window was opened. The Supreme Court of Ohio has held:

> [T]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle.

*Moore* at 48. Mr. Farrow correctly points out in his brief that the trooper in the *Moore* case detected a "strong" odor of burnt marijuana, while Sergeant Timberlake neglected to describe the strength of the odor he detected in this case and did not further delineate whether he believed the odor was emanating specifically from the vehicle's occupants or from the vehicle itself. However, the Supreme Court's holding in *Moore* drew no such distinctions, and plainly requires only the smell of marijuana, not a "strong" smell of marijuana. *See State v. Brown*, 2d Dist. Montgomery No. 27377, 2017-Ohio-2880, ¶ 7. *See also State v. Evans*, 8th Dist. Cuyahoga No. 94984, 2011-Ohio-3046, ¶ 14 ("To create such a narrow rule would require the police to ignore the obvious."). Notably, the Supreme Court later relied on its holding in *Moore* when analyzing an occupant's justifiable "detention in order to effectuate a search" of a vehicle's passenger compartment when a trooper "smelled a *light* odor of burnt marijuana coming from inside the car." (Emphasis added.) *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 12, ¶ 1. Here, the odor of burnt marijuana coming from within the vehicle established probable cause for Sergeant Timberlake to search the passenger compartment of the vehicle for contraband, pursuant to the automobile exception to the warrant requirement. *See Moore* at 48, 51.

{¶20} The search of a vehicle's occupants is more problematic, however, and will be deemed unlawful in the absence of an exception to the warrant requirement. *See id.* at 51. Similar to the trooper in *Moore*, Sergeant Timberlake admitted that he did not conduct a simple protective pat down, but in fact conducted a search by grabbing the bulge in Mr. Farrow's pants prior to searching the vehicle. *See id.* at 51-52. Generally, for the exigent circumstances exception to the warrant requirement to apply, there must be "'compelling reasons'" or "'exceptional circumstances'" to justify such an intrusion without a warrant. *Id.* at 52, quoting *McDonald v. United States*, 335 U.S. 451, 454 (1948). *See also State v. Price*, 134 Ohio App.3d

464, 467 (9th Dist.1999), quoting *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("Although there is no precise list of all the exigent circumstances that might justify a warrantless search, exigent circumstances generally must include the necessity for immediate action that will 'protect or preserve life or avoid serious injury,' * * * or will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest * * *."). For instance, a warrantless search is justified if there is imminent danger that evidence will be lost or destroyed if a search is not immediately conducted; e.g., marijuana and other narcotics are easily and quickly hidden or destroyed, so a warrantless search may be justified to preserve evidence. *Id.*

{¶21} In *Moore*, the Supreme Court found that the following exigent circumstances justified the warrantless search of Mr. Moore's person:

> Here, Sergeant Greene was alone at the time he stopped defendant's vehicle. He had probable cause to believe that defendant had been smoking marijuana from the strong odor of burnt marijuana emanating from the vehicle and on the defendant. In order to obtain a warrant before searching defendant's person for possible narcotics, he would have had to permit defendant to leave the scene in defendant's vehicle. Having to permit defendant to leave the scene alone, unaccompanied by any law enforcement officer, the dissipation of the marijuana odor, and the possible loss or destruction of evidence were "compelling reasons" for Sergeant Greene to be able to conduct a warrantless search of defendant's person.

*Id.* at 52-53. In the case sub judice, probable cause existed to believe that the vehicle contained marijuana, and Mr. Farrow was a passenger in that vehicle. Evidence was also presented that Mr. Farrow (1) admitted to smoking marijuana earlier, (2) presented Sergeant Timberlake with the purported source of his marijuana, i.e., the cigar wrapper, and (3) appeared to Trooper Dowler to be trying to conceal or hide something on his person. Because marijuana can be easily destroyed or hidden on one's person, we determine that a search of Mr. Farrow was justified under the particular circumstances in this case. *See id.* at 52. Unlike the trooper in *Moore*, Sergeant Timberlake was not alone at the traffic stop, but we nonetheless conclude that the

dissipation of the marijuana odor and the possible loss or destruction of evidence were compelling reasons to permit a warrantless search of Mr. Farrow's person. *See State v. Rodriguez*, 12th Dist. Butler No. CA2014-03-073, 2015-Ohio-571, ¶ 20; *Moore* at 52-53. *See also State v. Arrasmith*, 12th Dist. Butler No. CA2013-09-031, 2014-Ohio-4173, ¶ 20 (finding probable cause and exigent circumstances to remove drugs from a bulge in Arrasmith's sock because he could have quickly hidden or destroyed them); *State v. Kelley*, 4th Dist. Ross No. 10CA3182, 2011-Ohio-3545, ¶ 30 (concluding a warrantless search was justified to preserve evidence, as "Appellant obviously was attempting to conceal something and the officers had ample, reliable information that appellant had illegal drugs. The reasonable inference is that appellant was attempting to hide drugs. If the officer had not immediately searched him, the danger of further attempts at detection or destruction of evidence existed."). Requiring Sergeant Timberlake to either detain Mr. Farrow for perhaps several hours until law enforcement could obtain a search warrant or release him and risk that he would hide or destroy the contraband he possessed were unreasonable options under these circumstances. *See State v. Butcher*, 4th Dist. Washington No. 11CA18, 2012-Ohio-3836, ¶ 23. Therefore, we conclude that the search of Mr. Farrow's person was supported by probable cause and exigent circumstances.

{¶22} Even assuming arguendo the search of Mr. Farrow's person was unreasonable, we conclude that the pills on Mr. Farrow's person would have nevertheless been admissible under the doctrine of inevitable discovery. "Evidence that is illegally obtained is properly admitted 'once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation.'" *State v. Farrey*, 9th Dist. Summit No. 26703, 2013-Ohio-4263, ¶ 17, quoting *State v. Perkins*, 18 Ohio St.3d 193 (1985), syllabus. *See also Nix v. Williams*, 467 U.S. 431 (1984). Sergeant Timberlake had probable cause to search the

vehicle when he detected the odor of burnt marijuana emanating from within it. Sergeant Timberlake intended to pat Mr. Farrow down for safety purposes prior to securing him and searching the vehicle, and he testified that he could have possibly discovered the pill bags during that pat down. Moreover, the lawful search of the vehicle ultimately revealed nine oxycodone pills in the center console or cup holder, and the discovery of those pills would have given Sergeant Timberlake probable cause to arrest Mr. Farrow for aggravated possession of drugs and search him incident to arrest. *See* R.C. 2925.11(A) and 2925.11(C)(1)(a). Furthermore, prior to the search of Mr. Farrow's person, Mr. Farrow voluntarily removed a pill bottle with the label ripped off, claiming it was his medicine. Removing the label on a prescription bottle containing medication is a first-degree misdemeanor under R.C. 3719.08(E) and 3719.99 and is, therefore, an arrestable offense under R.C. 2935.03. *See State v. Harris*, 8th Dist. Cuyahoga No. 99481, 2013-Ohio-3735, ¶ 16. Thus, Sergeant Timberlake would have inevitably discovered the three additional bags of pills hidden on Mr. Farrow's person either during the forthcoming protective pat down or during a search incident to arrest for either possession of the nine oxycodone pills found in the car or for removing the pill bottle's label, or both.

{¶23} We conclude that the facts of this case satisfy the applicable legal standard, and the trial court therefore did not err in denying Mr. Farrow's motion to suppress. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

{¶24} Accordingly, Mr. Farrow's first and second assignments of error are overruled.

III.

{¶25} Mr. Farrow's first and second assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

KENNETH N. ORTNER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.