[Cite as *State v. Brown*, 2017-Ohio-2880.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                           :
                                                       :
    Plaintiff-Appellant                        :          Appellate Case No. 27377
                                                       :
v.                                                     :          Trial Court Case No. 2016-CR-2621
                                                       :
TOBY BROWN, JR.                                        :          (Criminal Appeal from
                                                       :           Common Pleas Court)
    Defendant-Appellee                         :
                                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of May, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

KRISTINE COMUNALE, Atty. Reg. No. 0062037, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} The State of Ohio appeals, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), from the trial court's decision and judgment entry sustaining defendant-appellee Toby Brown's motion to suppress evidence.

{¶ 2} In its sole assignment of error, the State contends the trial court erred in holding that police officers unlawfully ordered Brown out of his vehicle after smelling burnt marijuana in his car at a sobriety checkpoint.

{¶ 3} The facts underlying the present appeal are derived from the suppression-hearing testimony of three police officers, the only witnesses at the hearing. Based on their testimony, the trial court made the following factual findings in its suppression ruling:

On March 17, 2016 Officer Will Wright was working as a volunteer at an OVI sobriety checkpoint in Washington Township, Montgomery County, Ohio. As of March 17, 2016 Will Wright had been employed by the City of Dayton as a police officer for twenty-nine years. Officer Wright's general duties were homeland security officer for the City of Dayton Police Department. Officer Wright's co-volunteer for the OVI sobriety checkpoint from the City of Dayton Police Department was Officer Seiter. Officer Matthew Poulton from the Montgomery County Sheriff's Office was an additional officer located at station three of the OVI sobriety checkpoint.

The OVI checkpoint at Miamisburg-Centerville Road and Paragon Road was supervised by Sergeant Flagg of the Montgomery County Sheriff's Office. The operation had a manual that was provided to all of the police officers. The manual indicated that one of the objectives for the

checkpoint was to arrest impaired drivers. Officer Wright and the other volunteers received instructions before actually commencing their activity.

Miamisburg-Centerville Road at Paragon Road is a four lane or four-way roadway. The street is a major east-west thoroughfare in southern Montgomery County. The checkpoint involved funneling cars by use of cones and signs into one lane and then there [were] four or five stations for the actual stop of the vehicle and driver-law enforcement personnel encounter.

Detective Will Wright was at station number three at the checkpoint. Every car was being stopped. Officer Wright was assisted by two other officers at that particular station.

At about 10:30 p.m. on March 17, 2016 a vehicle operated by Defendant came to rest at station three. Officer Wright began to speak to Defendant through the window on the driver's side of the vehicle. Officer Wright engaged in an introduction during which he indicated who the officers were and what they were involved in. He told the driver why the officers were stopping the car. While Officer Wright was talking to Defendant Brown he detected an odor of burnt marijuana.

Detective Wright saw the Defendant's eyes and heard his speech. From these observations he could not detect any impairment of the Defendant.

Officer Wright analyzed his tactical plan as follows. He wished to separate Defendant from any marijuana that may have been in the car. He

felt that everything else, such as detecting impairment would be done outside of the car. So, Detective Wright asked Defendant to step out of the motor vehicle. Defendant opened the door and then dropped a cell phone charger to the street. The Defendant then bent or moved down as if to pick up the item and suddenly ran away. He ran from the south side of Miamisburg-Centerville Road to the north. Three Officers, but not Officer Wright, began to chase the Defendant.

Matthew Poulton is an evidence technician with the Montgomery County Sheriff's Office. As of March 17, 2016 Officer Poulton had been employed by the Montgomery County Sheriff's Office for eighteen years. Deputy Poulton was to work the OVI checkpoint in Washington Township on March 17, 2016. He arrived at the Miamisburg-Centerville Road site for the checkpoint at 10:00 p.m. He was not part of any oral briefing, but he had received written instructions from Sergeant Flagg. He had the "Operations Plan." Deputy Poulton was working at station number three. He had worked OVI checkpoints before March 17, 2016. On this particular occasion, the officers were stopping every car.

Deputy Poulton detected the odor of marijuana once the door of Brown's car opened. Deputy Poulton has experience in encountering marijuana and has knowledge of how it smells because of numerous job related exposures.

Deputy Poulton saw Defendant drop his cell phone charger, reach to pick it up and then run. Deputy Poulton chased Defendant. Deputy Poulton

eventually stopped chasing Brown so he could look for items possibly thrown by Defendant.

Deputy Poulton did not detect any signs that Defendant Brown was impaired. He was not involved in the search of Defendant's motor vehicle. He does not know if any marijuana was found in the vehicle.

Deputy Egloff of the Montgomery County Sheriff's Office was a member of the law enforcement team working the OVI checkpoint at Paragon and 725 on March 17, 2016. As of March 2016 Deputy Egloff had been employed with the Montgomery County Sheriff's Office for twelve years. On March 17, 2016 he was assigned as a "line checker" at station number two.

Deputy Egloff's station was adjacent to station number three. Deputy Egloff was working at about 10:30 p.m. He could not hear what was occurring at station number three because there was a mechanical device they were utilizing nearby. He generally overheard Detective Wright saying that he smelled something and he therefore asked Defendant out of the maroon Chevy he was driving. Deputy Egloff saw Defendant drop something, reach for the item, and then run. Deputy Egloff chased Defendant as he ran to the north of State Route 725 behind some buildings. Deputy Egloff did not apprehend Defendant, but he was in the vicinity of the arrest. He was in regular contact with Deputy Wolf, who made the apprehension. Deputy Egloff prepared a report of the incident. In preparing the report Deputy Egloff talked to Detective Wright, Deputy Poulton and

Officer Powell. Deputy Egloff did not detect any signs of impairment with respect to Defendant Brown. Deputy Egloff did not include in his report any indication that any of the officers involved had detected any indicators of impairment with respect to Defendant Brown.

Upon his apprehension, Defendant Brown was handcuffed and eventually placed in the backseat of a patrol cruiser. Later Defendant Brown was removed from that cruiser and placed in another patrol car. After Defendant was removed, suspected illegal narcotics were found on the seat near where Defendant had been located.

(Doc. # 15 at 1-4).

{¶ 4} Following the foregoing incident, a grand jury indicted Brown on one count of cocaine possession, a fifth-degree felony, apparently based on the narcotics left on the seat. (Doc. #1). Brown later moved to suppress the evidence. (Doc. # 10). In a December 6, 2016 decision and entry, the trial court sustained the motion. (Doc. #15). The trial court acknowledged the lawfulness of the sobriety-checkpoint stop of Brown's car. (*Id.* at 4). It concluded, however, that the officers had no lawful basis for ordering Brown out of his vehicle. The trial court reached this conclusion for three reasons. First, while recognizing that police may order a driver out of a vehicle during a traffic stop pursuant to *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct.330, 54 L.Ed.2d 331 (1977), the trial court reasoned that sobriety-checkpoint stops did not afford officers the same authority. Second, the trial court noted that drivers may be ordered out of their cars to perform field-sobriety tests if they show signs of being impaired. Drawing an analogy to OVI cases, the trial court concluded that the officers lacked reasonable suspicion that Brown was

operating a vehicle while impaired. Like the mere odor of alcohol, the trial court opined that the smell of marijuana, alone, was not a sufficient indicator of impairment to remove Brown from his car. Third, the trial court acknowledged that officers operating checkpoints may have occasion to order suspects out of their vehicles to deal with "other crimes" not involving impaired driving. The trial court noted, however, that police needed reasonable and individualized suspicion that Brown "was in possession of marijuana." (*Id.* at 8). The trial court found such suspicion lacking and determined that Brown "randomly" had been ordered out of his car. (*Id.*). In support, it noted that the officers described smelling "an odor" of marijuana but did not characterize the odor as "strong" or "fresh." It noted too that the officers testified about smelling the marijuana odor in Brown's car but not specifically on Brown's person. For these reasons, the trial court distinguished *State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000), wherein the Ohio Supreme Court held at the syllabus that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." Based on its finding that the officers unlawfully had ordered Brown out of his car, the trial court suppressed all evidence discovered after that point. (*Id.* at 9).

{¶ 5} In ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether

they meet the applicable legal standard." *Id.*

{¶ 6} Here the record supports the trial court's factual findings, which are based on suppression-hearing testimony and are quoted above. The key issue raised on appeal is a legal one, to wit: whether under those facts the officers were entitled to order Brown out of his car to investigate the odor of marijuana they detected emanating from the vehicle. In resolving this issue, we will accept, purely arguendo, the trial court's distinction between traffic stops and sobriety-checkpoint stops with regard to an officer's authority to order a driver out of his vehicle. We also will accept the trial court's determination that the officers lacked reasonable suspicion that Brown was operating his vehicle while impaired. Although two officers smelled burnt marijuana when they approached Brown's vehicle, the record lacks evidence that his driving was impaired or that he personally exhibited any other indicia of impairment.

{¶ 7} We disagree, however, with the trial court's final determination regarding the officers' authority to order Brown out of his vehicle to investigate the odor of marijuana they detected. We do not disagree with the notion that to search Brown personally police needed at least reasonable, individualized suspicion that Brown, the sole occupant of the vehicle, was in possession of marijuana. But in our view, the odor of burnt marijuana they detected provided both suspicion Brown, the only occupant, was in possession of marijuana and the contraband was located in the vehicle. This authorized Brown's removal from his car. As set forth above, the Ohio Supreme Court has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle[.]" *Moore* at 48. We recognize that the officer in *Moore* detected "the strong odor of burnt marijuana in the vehicle and on the

defendant's clothing." *Id.* Here the officers did not use an adjective to qualify the strength of the odor they smelled. Nor did they specify that they smelled the odor in Brown's car and on his person. In our view, however, these differences do not meaningfully distinguish *Moore.* The *Moore* court itself did not draw such distinctions, simply holding at the syllabus that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search."[1]

{¶ 8} The Ohio Supreme Court removed any doubt about the meaning of *Moore* six years later in *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985. In *Farris*, an officer stopped the defendant for speeding. When the defendant lowered his car window, the officer "smelled a light odor of burnt marijuana coming from inside the car." *Id.* at ¶ 1. In the course of its ruling, the *Farris* court relied on *Moore* to find that this odor of marijuana justified detaining the defendant and searching his vehicle. The majority reasoned:

> Here, Farris's extended detention was not based upon the purpose
>
> of the original stop, excessive speed, but was based upon [officer] Menges's

---

[1] *Compare State v. Rice*, 8th Dist. Cuyahoga No. 80997, 2003-Ohio-557, ¶ 17-18 ("Appellant urges this court to find that the strength of that smell must somehow determine whether a warrantless search of the vehicle is appropriate. From the tenor of his argument, a search is not justified if the odor is weak in that a weak odor signifies a more distant time that the marijuana was smoked by its occupants, who may or may not be the same occupants detained. * * * Nonetheless, the *Moore* court did not make the distinction urged by appellant. To the contrary, the *Moore* court merely stated that the 'smell of marijuana,' as detected by a person qualified to recognize that odor, is sufficient to establish probable cause. Without more, we are unwilling to say that a less potent odor of marijuana emanating from a vehicle is, therefore, insufficient thereby making any evidence seized as result of a warrantless search of the vehicle subject to suppression."); *see also State v. Davenport*, 2017-Ohio-688, __ N.E.3d __ (2d Dist.), ¶ 21-23 (holding that an officer had probable cause to search the passenger compartment of the defendant's vehicle where the officer detected "the faint smell of burnt marijuana and the strong odor of air freshener").

detection of the scent of burnt marijuana. In *State v. Moore* (2000), 90 Ohio St.3d 47, 734 N.E.2d 804, a case involving the search of a driver and his car pursuant to a traffic stop, this court held, "The smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle" without a warrant. Based on *Moore*, then, Farris's detention in order to effectuate a search was justified and did not violate the Fourth Amendment to the United States Constitution or its Ohio counterpart, Section 14, Article I of the Ohio Constitution.

*Id.* at ¶ 12.

{¶ 9} In Ohio, possession of any quantity of marijuana is an offense. R.C. 2925.11(C)(3)(a). The odor of marijuana is evidence of possession. Under *Moore* and *Farris*, a "strong odor" is not required. Any odor of marijuana emanating from a legally stopped vehicle creates probable cause to believe a violation of the law has occurred. That being so, the officers here lawfully ordered Brown out of his vehicle. The trial court erred in holding otherwise.[2] The State's assignment of error is sustained.

{¶ 10} The judgment of the Montgomery County Common Pleas Court is reversed, and the cause is remanded for further proceedings.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

---

[2] In light of this conclusion, we need not address the possibility—not raised by either party—that Brown independently subjected himself to a valid arrest by fleeing the scene of the sobriety checkpoint on foot. *Compare State v. Lewis*, 2d Dist. Montgomery No. 27152, 2017-Ohio-1195, ¶ 12 (recognizing that a defendant cannot obstruct an officer in the performance of his official duties, regardless of whether the officer's actions are lawful, by fleeing on foot and forcing police to chase him).

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Kristine Comunale
Hon. Timothy N. O'Connell