**[Cite as *State v. Hess*, 2021-Ohio-3755.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 2020-TRC-1203 |
| | : | |
| JAMIE HESS | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 22nd day of October, 2021.

. . . . . . . . . . .

MARK M. FEINSTEIN, Atty. Reg. No. 0074332, Municipal Court Prosecutor's Office, 205 South Main Street, 2nd Floor, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

SARA M. BARRY, Atty. Reg. No. 0090909, 130 West Second Street, Suite 1700-116, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Jamie Hess appeals his conviction for driving under the influence of alcohol or drugs (DUI), in violation of Ohio Basic Code (O.B.C) 73.01(A)(2)(a)(b), a misdemeanor of the first degree, and lighted lights required, a minor misdemeanor, in violation of O.B.C. 74.03(A). [1] Hess argues on appeal that the trial court erred in denying his motion to suppress all evidence emanating from his DUI arrest. Hess filed a timely notice of appeal on March 19, 2021.

{¶ 2} The incident which formed the basis for Hess's convictions occurred on the night of October 28, 2020, when Mechanicsburg Police Lieutenant David C. Patrick II was on routine patrol in a marked police cruiser. Lieutenant Patrick testified that, at approximately 8:46 p.m., he observed an individual traveling in a 2008 Chevy station wagon on Park Avenue in Mechanicsburg, Ohio, in Champaign County. Patrick testified that it was dark at the time, and he observed that the subject vehicle had only its fog lights on, rather than its full headlights. Patrick testified that he turned his cruiser around and began following the station wagon, at which time he also observed the vehicle travel left of the centerline. On the basis of his observations, Patrick activated his overhead lights and conducted a traffic stop of the vehicle.

{¶ 3} Lieutenant Patrick exited his cruiser, approached the vehicle, and asked the driver, later identified as Hess, for his driver's license, proof of insurance, and registration. Hess provided Patrick with his driver's license but failed to provide his insurance card and registration. Patrick testified that he explained the reason for the traffic stop to Hess and

[1] The Village of Mechanicsburg, in which the offenses occurred, had adopted the O.B.C. by Village Ordinance No. 1-20-02.

gave him an opportunity to correct the situation with his headlights, but Patrick testified that he observed Hess have a great deal of difficulty activating the vehicle's headlights.

{¶ 4} At this point, Hess informed Lieutenant Patrick that he knew where his insurance card and registration were, and he opened his glove compartment; while Hess was retrieving his paperwork, a sandwich baggie fell onto the passenger seat. Patrick testified that when he asked what the sandwich baggie was, Hess reached over and handed the baggie to him. Patrick testified that, based upon his experience and training, he believed the substance in the baggie to be marijuana. Hess then admitted that he had smoked marijuana earlier that day. Patrick also testified that, during their conversation, he observed that Hess had glassy, bloodshot eyes, "very lethargic speech," and he moved very slowly. Tr. 9.

{¶ 5} Lieutenant Patrick testified that, based upon the location of the baggie containing marijuana, he asked Hess to exit the vehicle. Patrick asked Hess if there was any other contraband in the vehicle, and Hess stated that there were rolling papers in the glove compartment. After he searched Hess for officer safety, Patrick searched the vehicle and found rolling papers in the glove compartment.

{¶ 6} At this point, Lieutenant Patrick informed Hess that he was going to conduct field sobriety tests. Patrick testified that he was certified in Advanced Roadside Impaired Roadside Enforcement (ARIDE), which he could use to determine whether a suspect was impaired from the use of marijuana. While Hess did not fail the horizontal gaze nystagmus (HGN) test administered by Patrick, Hess did fail the walk and turn test by exhibiting seven out of eight clues that he was impaired. Patrick then administered the one-leg stand test. Based upon Hess's apparent inability to perform the test correctly,

Patrick stopped the test. Notably, Hess tested negative for alcohol consumption. At the conclusion of the field sobriety testing, Patrick placed Hess under arrest for driving under the influence of marijuana and took him into custody.

{¶ 7} On November 3, 2020, Hess appeared before the trial court and was arraigned on both DUI and lighted lights required.[2] On December 11, 2020, Hess filed a motion to suppress all evidence obtained from the search of his vehicle on October 28, 2020, including the results of the field sobriety tests administered by Lieutenant Patrick. Hess argued that Patrick had not had probable cause for the initial stop of the vehicle, had not had probable cause to detain and arrest Hess, and "did not have lawful cause to form the opinion that [Hess] was under the influence of drugs." Appellant's Brief, p. 4. Lastly, Hess argued that the field sobriety tests had not been executed in compliance with R.C. 4511.19(D)(4)(b).

{¶ 8} A hearing was held on Hess's motion to suppress on January 12, 2021, and the trial court allowed the parties to file written arguments after the hearing. On February 8, 2021, the trial court overruled Hess's motion to suppress.

{¶ 9} On March 17, 2021, the State filed a motion to amend the DUI charge from DUI in violation of O.B.C. 73.01(A)(1)(a) to DUI in violation of O.B.C 73.01(A)(2)(a)(b). On March 18, 2021, Hess pled no contest to DUI as amended and lighted lights required. At the same plea hearing, Hess also pled no contest to possession of marijuana in Champaign M.C. No. 2020-CRB-812. We note that the plea form signed by Hess stated

---

[2] The record establishes that Hess was charged for possession of marijuana under a separate case number, Champaign M.C. No. 2020-CRB-812. Hess's appointed appellate counsel therefore contends that the possession charge is not at issue in this appeal, and no arguments related to the possession of marijuana charge and conviction are presented in his brief.

that he pled no contest to DUI (prior within 20 years) in violation of O.B.C. 73.01(A)(1)(a), rather than the proposed amended charge of DUI in violation of O.B.C. 73.01(A)(2)(a)(b). We also note that we have not been provided a transcript of Hess's plea hearing. Nevertheless, the judgment entry of conviction reflects a conviction for an amended charge of DUI in violation of O.B.C. 73.01(A)(2)(a)(b). Absent a transcript of the plea hearing, we cannot determine whether Hess entered his no contest plea to the original DUI charge and was found guilty of an amended charge, or whether the DUI section set forth in the plea form was merely a scrivener's error. No assignment of error has been raised with respect to this discrepancy, and Hess has not demonstrated any prejudice to this Court with respect to this issue.

{¶ 10} Thereafter, Hess was sentenced to 90 days in jail with 84 days suspended, suspension of his driving privileges, community control for a period of four years, and a fine of $1,700.

{¶ 11} It is from this judgment that Hess now appeals.

{¶ 12} Hess's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION

TO SUPPRESS.

{¶ 13} Hess contends that the trial court erred when it overruled his motion to suppress. We note that Hess no longer disputes the validity of Lieutenant Patrick's basis for the initial traffic stop. Rather, Hess contends that Patrick did not have a reasonable articulable suspicion that Hess was impaired so as to justify field sobriety testing. Hess also argues that the trial court erred when it found that Patrick had probable cause to arrest Hess for DUI.

**Standard of Review**

{¶ 14} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), citing *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Villegas*, 2d Dist. Montgomery No. 27234, 2017-Ohio-2887, ¶ 11, citing *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

**Reasonable, Articulable Suspicion of Intoxication**

{¶ 15} As previously stated, Hess contends that he was unlawfully detained by Lieutenant Patrick because Patrick lacked the requisite reasonable, articulable suspicion that Hess was driving under the influence to justify prolonging the traffic stop for purposes of conducting a DUI investigation and field sobriety testing.

{¶ 16} "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures." (Citation omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. "Stopping an automobile is reasonable if an officer has probable cause to believe that a traffic violation has occurred." *State v. Brown*, 2d Dist. Greene No. 2011-CA-52, 2012-Ohio-3099, ¶ 13, citing *Whren v. United States*, 517

U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). However, "[a]n officer cannot continue to detain a suspect past the time necessary for investigating and completing the initial traffic stop merely to conduct a 'fishing expedition' for other criminal activity." *Id.*, quoting *State v. Jones*, 2d Dist. Montgomery No. 23920, 2010-Ohio-5522, ¶ 16. To justify further detention for the administration of field sobriety tests, "the officer must have a reasonable, articulable suspicion that a person is driving under the influence[.]" *Id.*, citing *State v. Santiago*, 195 Ohio App.3d 649, 2011-Ohio-5292, 961 N.E.2d 264, ¶ 11 (2d Dist.).

{¶ 17} In determining whether there was a reasonable, articulable suspicion to detain a driver, the court must evaluate the totality of the circumstances. *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014-Ohio-2554, ¶ 14. These circumstances must be considered " 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *Id.*, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. If there are no articulable facts that give rise to a suspicion of illegal activity, then the continued detention constitutes an illegal seizure. *State v. Robinson*, 2d Dist. Greene No. 2001-CA-118, 2002 WL 1332589, *2 (June 14, 2002), citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997).

{¶ 18} We have not adopted any balancing tests for this evaluation, nor have we required consideration of a specific quantity of factors. *State v. Adams,* 2017-Ohio-7743, 97 N.E.3d 1137*,* ¶ 33 (2d Dist.). However, we have stressed the well-established law in our district that "traffic violations of a de minimus [sic] nature, combined with a slight odor of an alcoholic beverage, and an admission of having consumed 'a couple of beers,' are insufficient to support a reasonable, articulable suspicion of driving under the influence."

*State v. Aicher*, 2018-Ohio-1866, 112 N.E.3d 85, ¶ 19 (2d Dist.), citing *State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 9.

{¶ 19} In the case of a DUI investigation based on suspected alcohol impairment, this court has held that there was no reasonable, articulable suspicion of driving under the influence where an officer stopped a motorist for a window tint violation and noticed the motorist had glassy, bloodshot eyes, detected the odor of alcohol, and the motorist admitted to consuming "one or two beers." *State v. Dixon*, 2d Dist. Greene No. 2000-CA-30, 2000 WL 1760664 (Dec. 1, 2000).   In so holding, this court considered the fact that the traffic violation did not involve erratic driving and that the motorist's glassy, bloodshot eyes were "readily explained by the lateness of the hour, 2:20 a.m." *Id.* at *2.   We further explained that "the mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence." *Id.*

{¶ 20} In several other cases, however, we have found that the evidence established that the arresting officers had a reasonable, articulable suspicion that the suspect was driving under the influence, thereby justifying prolonging the traffic stop for purposes of conducting a DUI investigation and field sobriety testing. *See, e.g., State v. Criswell*, 162 Ohio App.3d 391, 2005-Ohio-3876, 833 N.E.2d 786, ¶ 3 (2d Dist.) (speeding, moderate odor of alcohol, bloodshot and glassy eyes, and admission of two beers); *State v. Mahaffey*, 2d Dist. Greene No. 2003-CA-56, 2004-Ohio-1023, ¶ 2 (several traffic violations, moderate odor of alcohol, admission of drinking, and difficulty finding paperwork); *Aicher*, 2018-Ohio-1866, 112 N.E.3d 85, ¶ 5 (expired plates, moderate odor

of alcohol, faint odor of burnt marijuana, glassy eyes, a little slurred speech, admission of a couple of drinks). We see no rational argument why the analysis of reasonable suspicion to conduct field sobriety testing during a DUI investigation based on suspected marijuana impairment would be any different from the alcohol-impairment cases.

{¶ 21} In support of his argument that Lieutenant Patrick did not have reasonable suspicion to conduct field sobriety testing in this case, Hess cites our decision in *State v. Berry,* 2d Dist. Montgomery No. 28199, 2019-Ohio-1254, ¶ 52, wherein we held that defendant's motion to suppress was properly granted because the police officer lacked a reasonable, articulable suspicion to administer field sobriety tests. In concluding that the officer lacked a reasonable, articulable suspicion that the defendant was impaired, the trial court focused on the following facts: the de minimis nature of the violations giving rise to the stop (two marked lane violations and a speeding violation); the lack of an admission that the defendant had consumed any alcoholic beverages or had been coming from a bar district; the officer noticed only a slight odor of alcohol; while the defendant's eyes were "bloodshot and glassy," his speech was not slurred and he did not fumble or fail to be responsive to the officer's requests; and the lack of erratic driving. *Id.* at ¶ 17.

{¶ 22} In further support of his argument, Hess also cites our decision in *State v. Brown*, 2017-Ohio-2880, 90 N.E.3d 384 (2d Dist.). In *Brown,* we found that the record established that the police were entitled to order the defendant out of his car to investigate the odor of marijuana they detected emanating from the vehicle after a stop at a field sobriety checkpoint. *Id.* at ¶ 9. We also accepted the trial court's determination that the officers lacked reasonable suspicion that Brown was operating his vehicle while impaired. Thus, we essentially held that the odor of burnt marijuana, standing alone, did *not* provide

an officer with a reasonable, articulable suspicion that the driver of the stopped vehicle was impaired, and therefore, the officer in that situation did not have a reasonable basis to conduct field sobriety tests. *Id.* Upon review, our decisions in *Berry* and *Brown* are distinguishable from the facts in Hess's case.

{¶ 23} As previously stated, Lieutenant Patrick testified that he observed an individual traveling on Park Avenue in Mechanicsburg after dark, and the subject vehicle had only its fog lights on, rather than its full headlights. Upon following the vehicle, Patrick also observed the vehicle travel left of the centerline. After observing these two traffic violations, Patrick activated his overhead lights and conducted a traffic stop of the vehicle.

{¶ 24} Lieutenant Patrick exited his cruiser, approached the vehicle, and asked Hess for his driver's license, proof of insurance, and registration. Hess provided Patrick with his driver's license but not his insurance card and registration. When Patrick gave Hess an opportunity to turn on the vehicle's headlights, Hess had a great deal of difficulty doing so.

{¶ 25} Hess informed Lieutenant Patrick that he knew where his insurance card and registration were and opened his glove compartment; a sandwich baggie fell onto the passenger seat. When Patrick asked what the sandwich baggie was, Hess reached over and handed the baggie to him. Patrick testified that he believed the substance in the baggie to be marijuana based upon his experience and training. Hess then admitted that he had smoked marijuana earlier that day. Lieutenant Patrick also testified that during their conversation, he observed that Hess had glassy, bloodshot eyes, "very lethargic speech," and moved very slowly. Tr. 9.

{¶ 26} Thereafter, Lieutenant Patrick asked Hess to exit the vehicle. Patrick asked Hess if there was any other contraband in the vehicle, and Hess stated that there were rolling papers in the glove compartment. After he searched Hess for officer safety, Patrick found rolling papers in the glove compartment where Hess had indicated. Based upon the observed traffic violations, Hess's lethargic behavior, his bloodshot, glassy eyes, the discovery of marijuana and rolling papers, and Hess's admission that he had smoked marijuana earlier in the day, Patrick decided to conduct field sobriety tests. Under these circumstances, we find that Patrick had a reasonable suspicion that Hess was driving under the influence of marijuana and was justified to detain him for field sobriety testing.

## Probable Cause to Arrest

{¶ 27} Hess also contends that Lieutenant Patrick failed to conduct the field sobriety tests in substantial compliance with the National Highway Traffic Safety Administration (NHTSA) manual. Hess argues that his arrest for driving under the influence of marijuana was an unlawful seizure because Patrick lacked probable cause to make the arrest.

{¶ 28} With respect to the admission of field sobriety test results in a DUI prosecution, the applicable statute provides:

In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the

tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:

(i) The officer may testify concerning the results of the field sobriety test so administered.

(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.

(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

R.C. 4511.19(D)(4)(b). *See also State v. Murray*, 2d Dist. Montgomery No. 28373, 2020-Ohio-45, ¶ 19.

{¶ 29} The results of field sobriety tests generally are admissible so long as the proper foundation has been laid as to both the administering officer's training and ability to administer the tests and the actual technique he or she used to administer the tests. *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. Accordingly, the State's burden of proof regarding the admissibility of field sobriety test results "is not an onerous one"; " 'general testimony that all pertinent rules and regulations had been followed in conducting the defendant's test, if unchallenged, would amount to a sufficient foundation for the admission of the results.' " *State v. Murray*, 2d Dist. Greene

No. 2002-CA-10, 2002-Ohio-4809, ¶ 11, quoting Painter & Looker, *Ohio Driving Under the Influence Law*, T11.19 (2001 Ed.). "For example, testimony by the officer that he or she had been trained to perform the HGN test under NHTSA standards, and that the test was performed in the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards." *State v. Reynolds*, 2d Dist. Greene No. 2012-CA-64, 2014-Ohio-3642, ¶ 27, citing *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 54.

{¶ 30} In his motion to suppress, Hess argued generally that "all tests of Defendant's coordination and sobriety were not administered in compliance with" NHTSA. Motion to Suppress, p. 1. Later in the motion to suppress, Hess argued that the field sobriety tests were not in substantial compliance with the NHTSA because Lieutenant Patrick "failed to acknowledgment [sic] Defendant's ailments and how they could affect the reliability of the testing." *Id*. at p. 9.

{¶ 31} During the suppression hearing, Lieutenant Patrick testified that when he went through the police academy in 2012, he received the Standardized Field Sobriety Training. Tr. 9. Patrick also testified that in 2018, he received ARIDE training, a 16-hour course on DUI offenses involving drug use. *Id*. Patrick testified that, before conducting the tests, he walked Hess over to a flat, dry section of the parking "with a line" they could use for the walk and turn test. Tr. 10. Patrick then turned off the flashing lights on his cruiser so as to not obscure Hess's vision or affect the field sobriety tests in any way. Patrick testified that he also had Hess turn his back toward the police cruiser so that he was not "facing any residual light." Tr. 11.

{¶ 32} As previously stated, Lieutenant Patrick testified regarding his administration, pursuant to his training, of three field sobriety tests – HGN, "walk and turn," and "one-legged stand." Patrick testified that the HGN test was used to determine if a suspect was intoxicated from alcohol, but he conducted it on Hess even though he believed Hess was impaired from marijuana use. Hess passed the HGN test. Patrick then asked Hess whether he had any medical issues which might affect the outcome of the walk and turn test. Hess replied that he had some balance issues, and Patrick asked Hess if he could continue. Hess replied in the affirmative. Thereafter, Hess failed the walk and turn test by exhibiting seven out of eight clues that he was impaired.

{¶ 33} Lieutenant Patrick then administered the one-leg stand test. Based upon Hess's apparent inability to perform the test correctly, Patrick stopped the test. Patrick testified that, before conducting the tests, he had explained the instructions for each test to Hess, and Hess had indicated that he understood the instructions. Patrick testified that he also demonstrated the walk and turn test for Hess before having Hess perform the test.

{¶ 34} In the context of a motion to suppress breath test results in a DUI case, this court previously has remarked that the State's " 'burden to establish substantial compliance [with applicable testing standards] only extends to the level with which the defendant takes issue with the legality of the test.' " *State v. Conley*, 2d Dist. Greene No. 2007-CA-52, 2008-Ohio-609, ¶ 7, quoting *State v. Bissaillon*, 2d Dist. Greene No. 06-CA-130, 2007-Ohio-2349, ¶ 12. We further stated:

When the defendant's motion to suppress merely raises a generalized claim

of inadmissibility * * *, the burden on the State is fairly slight. * * * Thus, the

State must demonstrate compliance only in general terms when the motion to suppress raises issues in general terms. No specific evidence is required unless the defendant raises a specific issue in his or her motion.

*Id.*

{¶ 35} Here, the record establishes that Lieutenant Patrick considered Hess's "balance issues" before administering the walk and turn test and the one-legged stand test. When asked if he could complete the test as he had been instructed by Patrick, Hess replied in the affirmative. Furthermore, contrary to Hess's argument that Patrick should have performed additional sobriety tests for possible marijuana intoxication in order to adequately determine whether Hess was impaired, the field sobriety tests that were administered were sufficient to establish Hess's impairment from marijuana use. Additionally, the fact that Patrick did not detect the odor of marijuana was not dispositive, but was only one factor to be considered by the trial court. Simply put, there was no evidence in the record which established that Patrick had failed to substantially comply with NHTSA standards when he conducted field sobriety tests on Hess. Accordingly, the record supports the trial court's finding that Patrick had probable cause to arrest Hess for DUI based upon his failure to correctly perform the field sobriety tests that had been properly administered by Patrick.

{¶ 36} Having concluded that the State established Lieutenant Patrick's compliance with NHTSA standards to an extent commensurate with the challenge raised by Hess prior to and/or during the suppression hearing, we determine that the trial court did not err when it overruled Hess's motion to suppress.

{¶ 37} Hess's sole assignment of error is overruled.

{¶ 38} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Mark M. Feinstein
Sara M. Barry
Hon. Gil Weithman